122 N.J. Super. 361 (1973)
300 A.2d 570
WILLIAM J. KENNEDY, ADMINISTRATOR OF THE ESTATE OF WILLIAM H. KENNEDY, DECEASED, PLAINTIFF-APPELLANT,
v.
HARRISON W. ROACH, JR., AND CATHERINE E. ROACH, HIS WIFE, EDWARD ROACH AND JOAN PATRICIA ROACH, HIS WIFE, AND NORMAN ROACH AND MARGARET ELIZABETH ROACH, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 1973.
Decided February 9, 1973.
*362 Before Judges LORA, ALLCORN and BYRNE.
Mr. William M. Balliette, Jr. argued the cause for appellant (Messrs. Cafiero and Balliette, attorneys).
Mr. Louis C. Dwyer, Jr. argued the cause for respondents (Messrs. Kay and Corino, attorneys).
PER CURIAM.
Decedent William H. Kennedy was a licensed New Jersey real estate broker whose salesman, William J. Kennedy, negotiated the sale of the Surfrider Motel in May 1970 by the defendant sellers to James and Faye Mancini.
The sale price was $300,000 and the agreement of sale dated May 6, 1970 called for the payment of $5,000 upon the signing of such agreement and an additional sum of $35,000 on or before May 9, 1970, at which time the buyers were to *363 take over possession and operation of the motel. The balance of the purchase price was to be paid, with interest at 7 1/2% a year; $35,000 on September 15, 1970 (later modified to $20,000 on September 15, 1970 and $15,000 on September 15, 1971); interest only during 1971 and $11,250 plus interest on September 15, 1972, at which time title would be transferred and a $213,750 mortgage would be taken back by the sellers.
Plaintiff-appellant's commission was provided for under paragraph XIV of the agreement which stated:
It is understood and agreed between the parties that the real estate agent responsible for the sale is William Kennedy, realtor, and the Sellers agree to pay a commission to William Kennedy, realtor, in the amount of $9,000.00 as follows: $3,000.00 on May 9, 1970, and $6,000.00 on September 15, 1970, without interest. * * *
The buyers paid defendants the sum of $40,000 and went into possession on May 9, 1970, and plaintiff was paid the initial $3,000 on account of his commissions. The record reveals the buyers operated the motel during the summer of 1970 but thereafter defaulted, never making the payment due on September 15, 1970. The sellers thereupon re-took possession of the premises and retained the $40,000 previously paid.
Notwithstanding the buyers' default plaintiff claims he is entitled to the additional $6,000 in commissions which were due him on September 15, 1970. Defendants contend the commissions were contingent upon the receipt of the payments on May 9, 1970 and September 15, 1970.
The agreement of sale provided with respect to a default by the buyer that:
In the event of the faliure of buyer to comply with any of the terms hereof, and after 30 days written notice of demand by seller that said default be corrected, seller shall have the right to declare this contract null and void and it is expressly agreed that any and all monies paid by any means whatsoever hereunder, shall be and in such event are, hereby declared to be reasonable and proper rent for the premises in question for the period of occupancy by the buyer as may have transpired, and in such event buyer will immediately *364 vacate the premises without delay or hindrance, and upon failure to do so shall be a tenant (in default) of the seller, subject to the Landlord and Tenant Laws of the State of New Jersey. Upon tenant so vacating the premises, all items of personal property within the premises on the date of this agreement and/or substitution therefor shall remain. * * *
The trial judge found that said default clause was controlling with respect to the monies received by the sellers, and because the monies were to be treated as reasonable rent for the premises, plaintiff-broker should receive a rental commission of 10%, there having been testimony that 10% was the customary commission for seasonal rentals. He thereupon entered judgment for plaintiff for $1,000, $3,000 having already been paid as set forth above.
We are, of course, well aware of the landmark holding of Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 555 (1967) that a broker is not entitled to a commission from the seller if title does not pass because of the inability or fault of the purchaser and that public policy requires the courts to read into every brokerage agreement or contract of sale a requirement that barring default by the seller, commissions shall not be deemed earned against him unless the contract of sale is performed.
However, Dobbs did not deal with a situation such as is here involved, nor do we deem the factual complex of this case brings it within the comprehension of the holding therein. The rather meagre record reveals that William J. Kennedy, who negotiated the sale, was a television repair man who had also worked for 17 years as a part-time real estate salesman in his father's office. The agreement for the sale of the motel which included the provisions for brokerage commissions was prepared by the seller's attorney and was executed in said attorney's office. Plaintiff-broker was not represented by an attorney at any phase of such proceedings. Plaintiff agreed to a 3% brokerage commission notwithstanding the customary fee in the trade or business was 6% and, consequently, his commissions were reduced from $18,000 to $9,000.
*365 Although the commission agreement is not ambiguous, the trial judge received the uncontradicted testimony of the broker that it was never agreed that payments of commissions would be conditioned upon receipt of payments from the purchaser  actually the testimony was any such condition was never discussed.
The buyers went into possession on May 9, 1970 and actually ran the motel for some four months. In our opinion the "crucial time" contemplated by Dobbs, supra, at 552 for the vesting of commissions was said May 9, 1970 and not September 15, 1972 (some 28 months later) when title was to be transferred, or September 15, 1970 when another $20,000 was to be paid by the buyers. While we realize the $40,000 paid represented 13 1/3% of the total purchase price and hence was not greatly in excess of a perhaps standard deposit of 10%, there was no evidence whatsoever adduced as to what the sellers' net return might have been had they themselves operated the motel that summer of 1970.
Under the circumstances of this case we find no "inequality of bargaining power, position or advantage" between the broker and the seller, nor any inequity or unconscionability which militates against the entitlement of plaintiff to his $9,000 commission as of the time when the buyer went into possession and took over the operation of the motel, albeit payment of $6,000 thereof was to be deferred to September 15, 1970.
Reversed and remanded for entry of judgment in accordance with this opinion.
ALLCORN, J.A.D. (dissenting).
The factual complex here is clearly within and is controlled by the rule enunciated in Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528 (1967). Inasmuch as the contract failed of consummation admittedly because of default by the buyer, the broker is entitled to no commission whatever against the sellers.
Defendants not having filed a cross-appeal, however, I would affirm the judgment of the trial court.